# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| W.C. PINKARD & CO., INC., <br> d/b/a COLLIERS PINKARD, <br><br> Plaintiff, <br> v. <br><br> WALKER CST, LLC, <br><br> Defendant. | **MEMORANDUM OPINION**, <br> **ORDER AND** <br> **RECOMMENDATION** <br><br> 1:09CV348 |

This matter is before the court on a motion for partial summary judgment by Plaintiff W.C. Pinkard & Co., Inc. (docket no. 22). Defendant has responded in opposition to the motion, and the matter is ripe for disposition. For the following reasons, the court will grant the motion for partial summary judgment.

**NATURE OF THE CASE**

This is a breach of contract action in which Plaintiff has sued Defendant based on Defendant's failure to pay commissions owed to Plaintiff under a listing agreement for commercial real estate. In the motion for partial summary judgment, Plaintiff contends that Defendant has admitted that, under the listing agreement, Defendant currently owes at least a 1% commission to Plaintiff for two leases, each between Defendant and Duke University.[1] Defendant has refused to pay the 1% commission. Plaintiff therefore contends that it is entitled to partial summary

---

[1] Plaintiff contends, in addition, that Defendant owes a 5% commission on one of the leases and a 6% commission on the other lease.

judgment as to the 1% commission and reserves the right to pursue the remaining commissions due and owing through this litigation.

**BACKGROUND**

In 2007, Defendant Walker CST, LLC retained Plaintiff Colliers Pinkard to act as its listing agent for various commercial properties in Durham, North Carolina's West Village neighborhood. Defendant is an affiliate of Blue Devil Ventures, a company formed by former Duke University basketball players Christian Laettner and Brian Davis, along with their classmate Tom Niemann. Blue Devil Ventures specializes in the adaptive reuse of historic buildings. In the 1990s, Blue Devil Ventures purchased various Liggett & Myers tobacco warehouses and buildings in Durham's West Village and converted them into loft-style apartments as well as segments of retail and office space. The two leases subject to the listing agreement in this case are leases between Defendant and Duke University, in which Duke University entered into a lease agreement for office space in the West Village project.

**UNDISPUTED FACTS**

On April 2, 2007, the parties executed a Listing Agreement in which Defendant was obligated to pay commissions to Plaintiff for Plaintiff's efforts in finding a tenant for the buildings owned by Blue Devil Ventures. (*See* Pl.'s Ex. A.)

In September 2008, Duke University executed a ten-year lease with Defendant for about 34,000 square feet of space in two of the warehouses (the Cobb

& O'Brien warehouses). (*See* excerpt of lease, attached as Pl.'s Ex. B.) In addition, in August 2008, Durham Realty executed a ten-year lease with Defendant for about 15,000 square feet of space in another building (the Main Street office building). (*See* excerpt of lease, attached as Pl.'s Ex. C.) Durham Realty is the real estate arm of Duke University, and the parties appear to agree that Duke University and Durham Realty are one and the same entity. Jones Lang LaSalle was the broker for Durham Realty and Duke University.

General Provisions of the Listing Agreement regarding Commissions

The Listing Agreement provides that a commission "shall be earned" upon execution of a lease between Defendant and a tenant. (*See id.*) The Schedule of Commissions, Exhibit B to the Listing Agreement, provides that half of the commissions due would be paid upon execution of the lease and the other half would be due upon commencement of the lease term. (*See id.*) The Listing Agreement further provides that in the event Defendant fails to pay commissions due and owing, interest shall accrue on the delinquent amounts from the date the same became due until paid. (*See id.*) The interest is to be paid at the lower of either 18% per annum or the highest lawfully permitted rate in North Carolina. (*See id.*) In addition, the Listing Agreement provides that if Plaintiff were forced to bring a legal action to recover its commissions, it would be entitled to recover its reasonable attorney's fees and costs. (*See id.*)

The Rates for the Commissions in the Listing Agreement

The rates for the commissions are set out in the Schedule of Commissions attached as Exhibit B to the Listing Agreement. (*See* Pl.'s Ex. A.) The Schedule of Commissions provides, in pertinent part:

> If a licensed real estate broker (including a Listing Agency's broker) is the Tenant's Agent, then Landlord shall pay commissions to Listing Agency equal to six percent (6%) of the aggregate rental for the entire lease term and Listing Agency will pay four percent (4%) to the Tenant Agent and retain two percent (2%) as its compensation.

(*See id.*) An exception to the payment of the 6% commissions is found in the Special Provision section of the Listing Agreement, Paragraph 14. Plaintiff's motion for partial summary judgment is based on the language of the Special Provision. (*See id.*) The Special Provision states, in pertinent part:

> In the event Duke University leases space within West Village and actually occupies said Leased Premises, [Plaintiff] shall be entitle [sic] to a fee of 1%.[2]

(*See id.*)

**DISCUSSION**

Summary Judgment Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.

---

[2] Defendant explains in its response brief that the Special Provision in the listing agreement reflects the fact that Defendant and Duke University had a pre-existing, strong business relationship. Therefore, the lower 1% commission recognizes and presumes that Plaintiff "would not have to expend as much effort or resources in finalizing Duke University as a tenant." (Def.'s Response Br. p. 2.)

R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Analysis

As noted, there are two leases at issue in this case between Duke University and Defendant. The parties differ over how much Defendant owes Plaintiff in commissions under the general provisions in the Listing Agreement (the provisions

referring to the 6% commission). According to Plaintiff, it is undisputed, however, that at least a 1% commission is owed on both leases under the Special Provision in Paragraph 14 of the Listing Agreement because it is undisputed that Duke University leased space within West Village and actually occupied the leased premises.[3] Plaintiff notes that Defendant admitted in its 30(b)(6) deposition that 1% is due and owing. (*See* Excerpts of 30(b)(6) Dep. of Def. at 25:22-26:6, 60:12-14, attached as Pl.'s Ex. D.) Plaintiff further notes that counsel for Defendant admitted more than a year ago that at least a 1% commission was owed on the leases. (*See* e-mail from David Rosenthal providing opinion of counsel to Plaintiff's agents, Dec. 23, 2008, at 2, attached as Pl.'s Ex. E.) Therefore, Plaintiff contends that Plaintiff is entitled to partial summary judgment on the 1% commission.[4] In addition, the Listing Agreement provides that in the event that Plaintiff were forced to bring a legal action to recover its commissions, it would be entitled to recover its reasonable

---

[3] As discussed, *supra*, although one of the leases was with Duke Realty, this entity is the same as Duke University, as Duke Realty is the university's real estate arm.

[4] The Durham Realty lease is a ten-year lease providing rental income of almost $3.5 million over the life of the lease. (*See* Pl.'s Ex. C.) Plaintiff contends therefore that a 1% commission of around $35,000 is due under the Durham Realty lease, along with interest to be paid at 18 percent per annum. *See* N.C. GEN. STAT. § 24-1.1. The Duke University lease is a ten-year lease providing rental income of around $7.6 million over the life of the lease. (*See* Pl.'s Ex. B.) Plaintiff contends therefore that a 1% commission of around $76,000 is due under the Duke University lease, along with interest to be paid at 18 percent per annum. *See* N.C. GEN. STAT. § 24-1.1. Plaintiff contends that Defendant owes Plaintiff $110,472.97, plus interest, in total commissions under both leases.

attorney's fees and costs. Plaintiff therefore seeks attorney's fees in connection with at least the filing of the motion and brief supporting partial summary judgment.

In its brief in response to the motion for partial summary judgment, Defendant states that it "has admitted, and the plain language of the Listing Agreement clearly entitles the Plaintiff to a one percent commission (1%) on the leased premises. However, 1% is all that the plaintiff is entitled to receive for its efforts." (Def.'s Br. p. 1.) Defendant contends that it has therefore "refrained from paying the 1% commission owed to Plaintiff until this dispute is resolved." (*Id.* at 3.) In opposing Plaintiff's motion for summary judgment, Defendant contends that for the court to rule now on the 1% commission at this point "would be bifurcating a single cause of action which has one set of facts, and one set of legal outcomes." (*Id.* at 5.) In support of its argument, Defendant points to Rule 54 of the Federal Rules of Civil Procedure, which provides, in relevant part:

> When an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . .

FED. R. CIV. P. 54.

Defendant's contention is without merit. As Plaintiff notes, Rule 54 does not apply. Rather, Rule 56 applies. Rule 56(a), titled "Motion for Summary Judgment *or Partial Summary Judgment*," states that "[a] party may move for summary judgment, identifying each claim or defense–or *the part of each claim* or defense-on

which summary judgment is sought." FED. R. CIV. P. 56(a) (emphases added); *see also Gadsden v. Fripp*, 330 F.2d 545, 547 (4th Cir. 1964). Here, although the parties disagree about the amount Defendant owes over and above the 1% commission, Defendant had admitted that it owes at least 1%; thus, partial summary judgment in Plaintiff's favor is clearly warranted. As Plaintiff notes in its brief, this case is factually similar to *Blackford v. Action Products Co.*, 92 F.R.D. 79, 80 (W.D. Mo. 1981), in which the plaintiff moved for partial summary judgment for $13,427.02, representing a portion of the commissions sought in one count of his complaint. The plaintiff's complaint also sought additional commissions as well as punitive damages. The defendant admitted that it owed the plaintiff $13,427.02 in commissions, but denied that it owed the plaintiff any additional amount. The court ruled that an award of summary judgment on a portion of the claim was clearly covered by Rule 56(a). The court observed that a "defendant should not be absolved from paying what he admits he owes simply because it is uncertain whether he owes still more." *Id.* Similar to the defendant in *Blackford*, Defendant here has admitted that it owes a 1% commission to Plaintiff. Defendant should not be allowed to refuse to pay Plaintiff what Plaintiff is rightfully owed simply because Defendant contests the amount it owes Plaintiff above the 1% amount. Therefore, the court should grant Plaintiff's motion for partial summary judgment.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for partial summary judgment (docket no. 22) is **GRANTED**. In addition, the court will award Plaintiff an appropriate attorney fee amount for bringing the summary judgment motion. The parties are directed to appear before the court in Durham at the U.S. Post Office and Courthouse Building, 323 East Chapel Hill Street, 2d Floor Courtroom, Durham, North Carolina at 9:30 a.m. on **Wednesday, February 23, 2011**. At the hearing, Plaintiff may submit its properly supported application for an attorney fee award, and the court will accept Defendant's response to the amount requested. No later than Tuesday, February 15, 2011, Plaintiff will serve its attorney fee application on Defendant, and Defendant must serve its response to the application on Plaintiff no later than Monday, February 21, 2011. Timely service of these papers should enable the parties to present their positions to the court at the February 23 hearing. Last of all, at the February 23 hearing, the court anticipates that it will enter a judgment awarding Plaintiff a specific dollar amount on this order granting the motion for partial summary judgment. The parties are directed to discuss the specific dollar amount between themselves in advance of the hearing and agree on that amount.

WALLACE W. DIXON
United States Magistrate

February 10, 2011